IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-0211-06






REBECCA ANN SHAW, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


IN CAUSE NO. 10-03-00299-CR FROM THE TENTH COURT OF APPEALS


JOHNSON COUNTY






Holcomb, J., filed a dissenting opinion.




D I S S E N T I N G O P I N I O N



 The jury at appellant's trial found that she was reckless when she injured her grandson, Schuyler
Shaw. After reviewing the record, I conclude that, if the jury had been given the option, it might well have
found that appellant's reckless injury of Schuyler occurred during the course of emergency medical care
administered in good faith and with reasonable care.

 My conclusion is based on the following evidence: (1) Dr. Hernandez's "Pediatric Consultation
Report," written shortly after Schuyler arrived at Cook Children's Hospital on November 9, 2001, in which
he expressed the view that Schuyler's "subarachnoid hemorrhagic" was probably the result of aggressive
cardiopulmonary resuscitation (CPR); (2) Dr. Hernandez's trial testimony that Schuyler's "subarachnoid
hemorrhage" was his principal injury; (3) appellant's testimony that her grandson, Schuyler, had a "heart
condition," for which he was given medication daily; (4) her testimony that, on the day in question, she
found Schuyler unresponsive and in respiratory distress, after which she frantically called 911 and
commenced CPR; (5) her testimony that caring for Schuyler was not a burden and that she did so happily;
(6) her demonstration to the jury of how she performed the CPR on Schuyler; (7) her testimony that she
had training in the care of children and understood how to handle them properly; and (8) her testimony
describing her relatively menial duties as an assistant to a pediatrician. 

 The jury, which was in a position to judge appellant's demeanor on the witness stand and to
see her courtroom demonstration of how she physically handled Schuyler, could have rationally
reconciled all of this evidence, along with all of the other evidence adduced at trial, and could have
rationally concluded the following: (1) on the day in question, appellant did find Schuyler unresponsive and
with labored breathing, as she claimed; (2) she then frantically called 911 and followed the dispatcher's
instructions to begin CPR; (3) in an attempt to save the child's life, she administered the CPR energetically
and perhaps erroneously but in good faith and with reasonable care; (4) in the course of administering the
CPR, she shook Schuyler, perhaps inadvertently, and caused his head to strike the bed's mattress, thereby
causing his injuries; and (5) when she shook Schuyler and caused his head to strike the mattress, she was
aware of but consciously disregarded a substantial and normally unjustifiable risk of injury. The jury also
could have rationally concluded that the nature of appellant's employment and her overall conduct on the
day in question were inconsistent with her being a licensed member of the healing arts and that she was,
in fact, not a licensed member of the healing arts.

 The majority concedes that "there is some evidence [Dr. Hernandez's medical report] from which
the jury could reasonably have found . . . that it was appellant's attempted CPR that caused [Schuyler's]
head injury." Given the evidence at trial, recounted above, the jury also could reasonably have found that
appellant, because of her frantic mental state upon finding Schuyler unresponsive and in respiratory distress,
was reckless when she attempted the CPR on him.

 As the majority points out, not much evidence is needed to raise a defense. All that is needed is
some evidence, from any source, that would support a rational inference that each element of the defense
is true. That minimal standard was met in this case.

 I respectfully dissent.


FILED OCTOBER 31, 2007

PUBLISH